Good morning, your honors. Thank you for your time here today. I represent Platinum Limousine Services, Inc. and Kurt Tsunayoshi. You may want to... Yeah. Oh, I'm sorry. No, sometimes it's a little harder to hear there. If you just pull a little closer, it's easier. Thank you. Okay. Just for... I understand we have three cases before the court, so I will begin with the case numbers that are 16-1-16989 and 16-16991. All right. The court stated that no reasonable person would pay a lawyer $141,347 or even $73,013 to win $5,575. That was stated by the magistrate judge, Kenneth Mansfield. The counsel for plaintiffs in this case obtained a de minimis settlement amount of $5,000 for Arsenio Pelayo and $575 for Brandon Borlas. The complete lack of success and total failure means that attorney's counsel should get virtually nothing in attorney fees and costs. In every sense, this was an attorney-driven litigation. How do you think the client must feel to have gotten such a de minimis settlement and then to have their attorneys apply for attorney fees in over $141,000? The award of costs and fees to plaintiff's attorneys in an amount that was 900% of the settlement obtained for plaintiff was essentially caused by two errors of the district court. First, in awarding fees, the district court failed to sufficiently consider the amount of plaintiff's recovery compared to the amount sought. Initially, the magistrate judge had, after having found the lodestar amount or come to a conclusion on the lodestar amount, then deducted the fees by 30%. The district court judge, it was then, objections were filed, and the district court judge then reduced it by 50%. I'm here today to request that the court, this honorable court, overturn the district court's decision and give only 90% of the total amount of attorney fees that have been determined by the lodestar amount. So, counsel, before we reach the issue of whether the district court properly reduced the lodestar, there's, I think, an underlying issue, which is calculation of the lodestar amount. And the recent Roberts decision would suggest that we should vacate the manner in which the district court calculated the reasonable hourly rate because it doesn't appear that the district court considered the declarations that were submitted. Do you distinguish Roberts? And if you do, how do you do that? Your Honor, I would say that, based upon Roberts, that I would distinguish it because of the lack of experience of plaintiff's attorneys and also because it wasn't at the very same counsel in this case as in the Roberts case. And he submitted, I believe, similar declarations because I remember the comment in the Roberts opinion about the inexplicable submission of the plumbers affidavit. But there were a handful of affidavits from attorneys with respect to the reasonable hourly rate. And the panel of this court found that the district court didn't adequately consider those affidavits or explain why it entered its order on the reasonable hourly fee. So, I mean, I don't know that you can distinguish the case based on the experience of the counsel since I believe it was the same counsel in both cases. All right, Your Honor, I apologize. So I think that in this case, in calculating the lodestar amount, and please forgive me if I don't have a strong command of the case that you're referring to, Your Honor, but I would like to distinguish it in this sense. And I think this may help the court to better understand our position. With regards to the lodestar amount, there were a couple of items that, for example, the paralegal services that the court awarded that, you know, pursuant to the local rules, counsel is required to set forth in a declaration adequately stating the hourly rate, the individual. In this case, and I think it's, in this case they didn't even set forth any type of paralegal, they didn't identify that person, they didn't, you know, put their qualifications. With regards to the two attorneys, you know, there's various issues with regards to the calculation of the lodestar amount. And while I understand that the court is most concerned with the hourly rate, originally the magistrate judge, I believe, had awarded it to be $200 and then up that amount by, you know, $15 or so for each counsel. And based on that, we don't believe that they have the necessary experience or the qualifications. Mr. Holcomb is primarily a DUI attorney. They've barely even handled these types of cases. And as you can see... I don't know that I necessarily agree with Judge Beatty, or I'm not going to make an advanced judgment on the Roberts case, because I think the court here did look at the affidavits. We're kind of in this odd situation between the two counsel where, of course, you'd like it to be as low as possible, and then you'd like it to be cut in addition to get down to a low number, correct? Correct. So we need to understand first, going back to Judge Beatty's question, your position on the lodestar amount. What is your position on whether the court took into account the appropriate factors here? I don't believe that the court did take into account the appropriate factors. And the reason being is because in this case, and if you go through the history of this case, the complaint originally started with Arsenio Paleo and Antonio Ponce. I believe that... Let me just summarize this in a better manner. Basically, what had happened was the court had not allocated properly the amounts to each defendant. So, for example, Mr. McMasters and Mr. Holcomb would be charging for Francis Monellenkill. Brandon, I'm sorry. I think we're kind of getting into the weeds, so you might want to bring it back up. And the big question we need to consider is on the lodestar amount, whether the court erred in setting that, and if so, the reason. My apologies, Your Honor. No, no problem. It's just that I know when you're in the case that a lot of the details are very important, and they will be ultimately, but there is this threshold question on the amount that we need to consider. Sure, Your Honor. Thank you for the opportunity to clarify. I would just like to say that the district court awarded fees and costs for work done by the plaintiff's attorneys on behalf of former employees who were not plaintiffs in this case or were forced to litigate their claims in a separate arbitration. There were three additional arbitrations that were compelled in this manner, and so putative plaintiffs Jonathan DeMotta, Isaac Goya, as well as Francis Monellenkill were all compelled to go to arbitration. However, Mr. Holcomb and Mr. McMasters sought fees for these individuals as well, and they did it generally. So, for example, when they did their first settlement demand, second settlement demand, it included all of these individuals as opposed to, and they claimed that they were there and that their time should all be credited to Arsenio Palil and Brandon Borlas. Does that answer the court's question, or can I further clarify? No, why don't you keep moving on your argument. Thank you, Your Honor. Aside from my concerns with the calculation of the lodestar amount, and I do believe that the district court did in fact err by increasing the amounts, I would like to note that I believe that the magistrate was more accurate in his decision in the hourly rate, and I do have concerns with the actual amount of time actually spent. I think that from the records, it's impossible to determine how much was spent for each of the plaintiffs in this matter, but somehow Mr. McMasters and Mr. Holcomb tend to bring it all together and do some type of block billing to say all the plaintiffs, there are approximately six that they were bringing different claims on, they should obtain attorney fees for everybody, when the actual settlement was only for Arsenio Palil, who received $5,000, and then Brandon Borlas, who received a total amount of $575, and that would be my argument with regards to the lodestar amount. Now, with regards to the entire amount, there has been a complete lack of success for them to even obtain a de minimis settlement. They originally asked for, in this case, for it first to be a class action, and their original settlement demand was over $2 million, over $2 million, and their actual result was only $5,575. They dispute that they ever demanded $2 million. Can you give us a record site to support that? Yes, Your Honor. I believe that in my brief. Can I answer that in my reply? I apologize. I understand you want the specific reference site? Of course. Thank you. Thank you. I will note that. So they had stated that in a bunch of different motions and various different things. In every sense, as I stated before, this was an attorney-driven litigation, and in awarding fees, the district court failed to sufficiently consider the amount of plaintiff's recovery compared to the amount sought, and that is my second argument. As I stated before, the magistrate judge originally reduced it by 30%. The district judge then reduced the entire amount by 50%. We believe it should be reduced even further to 90%. In McCowan v. City of Fontana, this Ninth Circuit Court of Appeals held that it would be an abuse of discretion to grant plaintiff's attorneys a percentage of their requested fees that is significantly higher than the percentage of requested relief they obtained for their clients. This court specifically stated McCowan's victory clearly fell far short of his goal. Therefore, it is unreasonable to grant his attorneys more than a comparable portion of fees and costs they requested. Here, plaintiff's attorneys sought over $2 million and settled for $5,575. Applying the rationale endorsed by the court in McCowan, the district court should have reduced plaintiff's attorney's fee award by at least 90% based on their lack of success. I understand that I presently have 3 minutes and 33 seconds. Would you like me to move to my second case? Your choice. Okay, I'll go ahead and begin on that. In the case number 18-15169, the court had found that the case, and I quote from the magistrate judge, the court finds this case is being driven almost entirely by attorney fees. The court finds that a further award of attorney fees and costs would therefore be unjust under the circumstances and declines to award them to plaintiff. In this situation, we had our cases pending in the Ninth Circuit Court of Appeals, and essentially what occurred is we were in the middle of mediations with the mediator from the Ninth Circuit Court of Appeals, so there was constant communication. We had not sought a supersedis bond in this matter because we had wanted to leave those funds available in the event that there was the opportunity to settle all of these cases. However, they brought a motion to compel discovery as well as to force us to obtain a supersedis bond. The district court, we believe, abused its discretion by awarding $8,740.83 in additional attorney fees, which is essentially almost twice as much as what the settlement was in this situation. And the reason that this is so offensive, what the district court judge did, is because local rule of practice for the United States District Court for the District of Hawaii, 7.4 states, no further or supplemental briefing shall be submitted without leave of court. So basically, the motions were filed, the hearing was scheduled for October 4th, and at that time, just minutes before the hearing, we are provided with a supplemental brief that sets forth their entire request for attorney fees. We were not provided this in the original briefing, and the lack of, I'm sorry, the actual documents show that there was no request for attorney fees and costs that was originally provided to us in the motion and in the reply brief. You may want to save the remaining time. Okay. Thank you, Your Honor. I'm sorry, I had reserved five minutes? No, as I explained at the outset, the total time on the clock is your total time. I understand. I reserved the remaining time. You were at four minutes when you decided to go into your other issues, so you do have some time for rebuttal, however. Thank you very much, Your Honor. Thank you. Good morning, Judge McConnell and members of the panel. I am Richard Holcomb here on behalf of the Plaintiffs Cross Appellants, and I would like to initially request, since we are cross appellants, that we also be permitted to reserve some time. The way it works is that you have consolidated, so you have your 15 minutes for all of the appeals. Very well, Your Honor. So I wanted to start by observing that Ms. Tanaka's sight of the error as to the awarded fee, we're dealing with just the first case, failed to consider the amount sought versus the award granted. And I would suggest that meticulously, first of all, reducing the hourly rate from what our declarations we believe demonstrate should be the prevailing market rate, and then meticulously deducting hours as excessive or otherwise not compensable. And then, based on this specific idea of we didn't get what we had initially requested, taking a 50% meat-axe reduction on top of that negates Ms. Tanaka's argument wholly. I mean, there's no way to say the judge did not consider that. That was the basis of this reduction. But we take issue with how those meat-axe reductions come about. And specifically, well, first of all, I would like to preface this with what we had originally sought in settlement. This figure of $2,098,775 is fictionalized. We never sought it. The first time it appears, based on my recollection, is prior defense counsel's response to our motion for attorneys' fees. What we did seek were back wages, which we obtained. On February 12, 2015, 16 months before the fees litigation, we sought to settle for twice the back wages due to Palaio and, at that time, Mr. Ponce, who did settle, and $15,551.30 in fees and costs. March 13, 2015, I approached defense counsel. I sought to negotiate settlement for Palaio and Borla specifically to prevent litigation regarding this collective that we requested. On several occasions, we had sought to meet informally with these appellants to discuss settlement. Mr. Holcomb, how do you describe the legal question that's before us? Very well. So what they are asking for, Your Honor, is they are asking that the court divine some... We read their brief, and I know what they're asking. I want you to tell me what is the legal question that's before us. Very well. The idea that the plaintiffs want proportionality in having the court calculate some perception of the amount that we purportedly sought versus what we were awarded and do a calculation in their brief and in oral argument. They specifically ask for percentages. What they are concerned about apparently, and she can correct me if I'm wrong, $5,575 was recovery. $44,785 was plaintiff's lawyer. That is correct. I think that's what she's concerned about. Yes, Your Honor. So we really don't know in this instance what success would look like. So the basis of their argument is you didn't get everything you asked for, you haven't succeeded. Well, Mr. Palaio had only sought $820.78 for his overtime violations in his motion for summary judgment. The Department of Labor only found that he was entitled to $7,500, which would include these difficult for us to prove off-the-clock hours. He ended up getting $5,000. That's five times as much as they ever offered. Okay? So you, if I understand following up on Judge Ferris, the district court gave you $44,000 in fees. Is that right? Approximately? Approximately, yes. And you won $141,000. Well, we believe that... I mean, yes or no? Yes. Yes, okay. I don't remember. I have a graph at the end of my opening brief of what we believe. I mean, that's an approximate $141,000. I believe that... Where did the district court err? Because the district court goes through, walking through, saying, I looked at the declarations. Of course, we have this one-off situation with the plumber's declaration that keeps coming back in Hawaii. And then the district court said, I looked at this. I looked at collectability. I looked at actual rates. I looked at your experience. And I even upped you from the Roberts litigation. So under an abuse of discretion standard, where did the district court go wrong? Okay, so we submit that the issue, first of all, is with the hourly rate. And the hourly rate and what we had emphasized in Roberts and what I'm emphasizing here is what the district court specifically finds. It's almost word for word, verbatim, that the amount that a plaintiff's counsel representing an indigent defendant relying on fee-shifting statutes is different than the amount that that same lawyer may go out and have a client pay them to represent them. And that is not only error, Judge, but that is legal error. And it should be reversed on a de novo type review. And that is the basis of where we get 225. We did submit seven declarations or thereabouts regarding what the fees should be. And I believe a request for 300 with my experience under the market rate established by those declarations is frankly kind of low. So if you add that to what we were awarded, that's an approximate one-third increase right there. Then back to this idea of McCown. What we believe, Your Honor, is that the Lodestar calculation should be properly calculated. I ask you about the legal question. Yes, sir. And I guess you'd say the legal question is abuse of discretion, isn't it? That would be the standard, I believe. The standard. And so you want to convince us the court, I assume, the court abused its discretion by awarding it. And your theory is what? Okay. So our theory is that the time for the deduction should have been taken out when calculating the Lodestar, rather than taking out a number of hours as excessive, a number of hours as not compensable, and then on top of that exacting this 50% MEDAX reduction. There are a number of cases where this court has talked about taking a haircut 10% here without requiring much explanation. Well, in this case, we got 50% on top of having these hours removed for excessive billing. And I would suggest to you that is double counting. And I don't think that McCown authorizes that type of deduction. And moreover, these cases tend to talk about claims being denied or lost, if you will, in order to have such a reduction imposed. Let me ask you this. These attorney fee cases are always difficult on appeal because of the standard of review, and I know you're familiar with that. But the court goes through very specific things. One, tasks that didn't advance the case, duplicate time entries, and, you know, one can disagree with the amount, clerical entries, and then excessive time, talking about the complaint and other things. Each of those, and then last, lack of success. So each of those is laid out. I'm not seeing where the double counting is in those factors. Okay, so we had cited the case, I'll give you the name, Velez v. Winn, which is older than McCown, only two years older, but it talks about pulling out the excessive hours. In other words, these are hours without much explanation that the district judge can just say, this did not contribute to your final award, and therefore it's not compensable. And then on top of that, after having done that, they do this meat ax reduction across the board. Tell me the amount of hours that were deducted for not advancing the case. It was pretty minimal, wasn't it? Well, okay, I don't know that I can do that right, but it's in my brief. But it's pretty tiny, that's why I'm asking where the overlap really is. Okay, so I understand what you're saying, but then should not the district judge be required to go through and say, well, these hours are not compensable for this reason? Instead of saying, okay, we're going to take a few of these hours here, and sure, there's nothing wrong with your timesheet. We're able to tell where you devoted these hours and for this task, but we're just going to say 50% off because, again, without very much explanation, we find that your success was less than what we expect of you or what you expected initially. So that, I believe, is the error, and that is the double counting. So our position is these types of deductions, where possible, should be made from the Lodestar calculation and explained appropriately. The Lodestar calculation getting a baseline hourly rate, I mean, that's where we start. That's step one. Step two of the Lodestar is then to go through the hours and say, well, this helped you get your result, this didn't, so we're going to pay you for A but not for B. And then you get a presumptively reasonable calculation that only in rare and exceptional circumstances should we then deduct. There's no finding that anything about this is rare or exceptional. And yet the analysis was done, hours were taken out, and then the 50% MEDAX reduction imposed. So that is our complaint, Judge Ferris. And I hope I answered your question. Okay. So I also wanted to point out a number of policy reasons why this court should reverse this case and against the proportionality standard, which the defendants seek that you infer from McCowan. So first it's going to invite, as has happened in this case, defendants to aggressively litigate these small damage claims brought by indigent plaintiffs pursuant to these fee-shifting statutes, knowing full well that these indigent plaintiffs cannot sustain that litigation. And, in fact, it's going to cause the attorneys at the onset to undersell these indigent plaintiffs' claims. If I don't get everything that I asked for at some point in this litigation, then I'm not going to get paid. What am I going to tell my client at this point? So it's going to ultimately cause these lawyers not to take these cases because of these considerations. And that is a direct contradiction of this and every other fee-shifting statute that I'm aware of. Because Congress has enacted this, the policy is to encourage people to bring these cases or lawyers to bring these cases on behalf of indigent plaintiffs, knowing that, number one, the plaintiff can't pay you. Number two, the damages aren't going to be sufficient to compensate you, should the defendant, as in this case, aggressively litigate the case over a period of now six years or however long it's been. And that's the whole purpose of the fee-shifting statute to begin with. I have one minute left. If your honors have any questions, I'd be happy to try to answer those for you. It appears not. Thank you. Thank you. Ms. Tanaki, you have a minute for rebuttal. I'll be very brief, Your Honor. Thank you very much. Judge Bade, just in response to your question, I believe that the site that we cited was an appellant's opening brief, page 2, EOR 417 to 418. Thank you for asking that question. Your honors, I just want to point out that what portion of the attorney fees are going to the actual client in this type of case? Zero. It's going all to benefit the attorneys. That's why they call it attorney's fees. Correct, Your Honor. Thank you. Very good point. But I do want to, again, point to the magistrate's comment in this case, that the court finds this case is being driven almost entirely by attorney fees, which I previously pointed out. Regardless, I do believe with regards to the 16-1-16989, I believe that there should be a further reduction of the entire amount. You know what he's saying? He's saying that aggressive litigation on the part of your client caused and made it necessary to defend. He knew the money wasn't coming, paying the litigation from one side, so he made what he thinks was the appropriate approach, and the court agreed with him. You're here now because you want us to reverse, and so is there any basis to what he's argued? No, Your Honor, I don't believe we are, and I have 16 seconds, so I'll try to do this as quickly as possible. We were not very, I'm sorry, Your Honor, first of all, I was not involved in that litigation at that time, but based upon the record, if you look at it, it started in January 15th of 2015 and then went to the following year where it settled. There wasn't very much that went on. There wasn't a ton of depositions. It was mostly motions. I mean, if you really look at the facts and what occurred during the proceedings, there wasn't very much. The attorneys were doing their job as far as being combative, filing motions to dismiss, but not being difficult in the sense of refusing to settle or anything of that sort, if anything, that was promulgated by the plaintiff's counsel, where they were just being outrageous in their demands. Thank you. Thank you very much. The case of Lyo v. Platinum Limousine is submitted. Thank both counsel for your argument this morning.
judges: Farris, McKeown, Bade